IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER T. CONTE, STANDING CHAPTER 13 TRUSTEE FOR THE SOUTHERN DISTRICT OF ALABAMA,<br>　　Appellant, | )<br>)<br>)<br>)<br>) | |
| vs. | )<br>) | Civil Action No. 23-00221-KD-N |
| JOHNNY BRACKSTON HILL,<br>LISA JO ANN BOUTWELL,<br>　　Appellee. | )<br>)<br>)<br>) | |
| In re:<br>JOHNNY BRACKSTON HILL,<br>LISA JO ANN BOUTWELL,<br>　　Debtors. | )<br>)<br>)<br>)<br>) | Bankruptcy Case No. 18-02317-HAC |
| CHRISTOPHER T. CONTE, STANDING CHAPTER 13 TRUSTEE FOR THE SOUTHERN DISTRICT OF ALABAMA,<br>　　Appellant, | )<br>)<br>)<br>)<br>) | |
| vs. | )<br>) | Civil Action No. 23-00219-KD-N |
| PEGGY PROFFITT,<br>　　Appellee. | )<br>)<br>) | |
| In re:<br>PEGGY PROFFITT,<br>　　Debtor. | )<br>)<br>) | Bankruptcy Case No. 18-04608-HAC |

**ORDER**

　　This action is before the Court[1] on appeal from the decision of United States Bankruptcy Judge Henry A. Callaway entered May 30, 2023; the record on appeal (doc. 4, Civil Action No. 23-00219-KD-N; doc. 5, Civil Action No. 23-00221-KD-N); Trustee Christopher T. Conte's

---

[1] The Trustee's unopposed Motion to Consolidate is moot. See Civil Action No. 23-00221-KD-N (Doc. 4).

Brief of Appellant (doc. 11,[2] Appellees Johnny Brackston Hill, Lisa Jo Ann Boutwell and Peggy Proffitt's Answering Briefs (doc. 12), and Reply Brief of The Trustee (doc. 13); and the Trustee's Appendices to the Appeal (doc. 11, Civil Action No. 23-00219-KD-N; doc. 14, Civil Action No. 23-00221-KD-N).

I. Background

Chapter 13 Debtor, Lisa Jo Ann Boutwell and Chapter 13 Debtor Peggy Proffitt were both injured in post-petition accidents that resulted in nonexempt net settlement proceeds. Boutwell was injured when merchandise fell on her head in a Dollar General Store. Proffitt was injured when she tripped and fell at a Wal-Mart Store. Boutwell's net settlement proceeds are $19,685.61, and Proffitt's net settlement proceeds are $7,685.39, both after payment of all attorney fees and costs and subrogation interests. Proffitt has an additional expense of $240.00, an insurance co-pay and possible expense of $500.00 for surgery on her nose. Boutwell and her husband Johnny Brackston Hill are currently paying $852.00 per month to the Trustee under a confirmed plan that pays a 40.25% dividend to unsecured creditors. Proffitt is paying $964.00 per month to the Trustee under a confirmed plan that pays a 62.19% dividend to unsecured creditors. The Debtors have used their respective $7,750.00 personal property exemption under Alabama law and cannot exempt any of the net settlement proceeds.

The Trustee filed motions pursuant to 11 U.S.C. § 1329 to modify the Debtors' respective Chapter 13 plans to increase the dividend to the unsecured creditors based on the existence of the post-petition net settlement proceeds. The Trustee requested that Boutwell's nonexempt proceeds of $19,685.61 be applied to the plan, in addition to the Debtors' monthly payments, to increase the percentage paid to unsecured creditors to 77.07%. The Trustee requested that

---

[2] For ease of reference, citations for the Brief of Appellant, Response and Reply are to the docket of Civil Action No. 23-cv-00221-KD-N.

Proffitt's nonexempt proceeds of $7,685.39 be applied to the plan, in addition to the Debtors' monthly payment, to increase the percentage paid to unsecured creditors to 76.86% but does not object to reimbursement of $240.00 to Proffitt from the nonexempt settlement proceeds for out-of-pocket expenses.

The Bankruptcy Court denied the motions. The Bankruptcy Court found that the Debtors' non-exempt settlement proceeds from the post-petition personal injury claims are property of the Debtors' estates under 11 U.S.C. § 1306(a). However, the Bankruptcy Court determined that the settlement proceeds are "assets" of the estates and not "projected disposable income" under 11 U.S.C. § 1325(b), and therefore, the "projected disposable income" test did not provide a basis for modification.

The Bankruptcy Court also found that the settlement proceeds, even though part of the bankruptcy estate, are not included in the liquidation test of 11 U.S.C. § 1325(a)(4) because they "would not be part of a hypothetical Chapter 7 under 11 U.S.C. § 541(a) or § 348(f)" (applying the theory that a hypothetical Chapter 7 liquidation necessitates a hypothetical conversion to a Chapter 7 and as a result the property of the estate is "based on the property the debtor had on the date of the petition not the date of the conversion.").

The Bankruptcy Court then determined that under the Eleventh Circuit's "non-statutory 'ability to pay' standard," which applies "proposed plan modifications based on post-petition assets," the settlement proceeds do not increase the Debtors' ability to pay, are not "windfalls," and therefore, do not warrant a "plan modification to increase the percentage paid to unsecured creditors" (doc. 1).

The Bankruptcy Court ordered the Trustee to apply the settlement proceeds to the respective Chapter 13 plans at the current percentage rate for the unsecured creditors,[3] rather than a higher percentage rate.  The Trustee filed notices of appeal. The Trustee's motions for stay pending appeal was granted.

II. Appellate jurisdiction, venue, and standard of review

The Court has appellate jurisdiction to hear final orders of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1) ("The district courts of the United States shall have jurisdiction to hear appeals [ ] from final judgments, orders, and decrees[.]"). Venue is proper because the appeal "shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." Id.

A bankruptcy court's findings of fact are reviewed for clear error. In re Colortex Industries, Inc., 19 F.3d 1371, 1374 (11th Cir. 1994) ("The district court makes no independent factual findings; accordingly, we review solely the bankruptcy court's factual determinations under the "clearly erroneous" standard."); In re Daughtrey, 896 F.3d 1255, 1273 (11th Cir. 2018) (citations omitted). ("A factual finding is not clearly erroneous unless, after reviewing all of the evidence, we are left with 'a definite and firm conviction that a mistake has been committed.'") A bankruptcy court's legal conclusions and any mixed questions of law and fact are reviewed *de novo*. In re Am.-CV Station Grp., Inc., 56 F.4th 1302, 1309 (11th Cir. 2023). "The district court must independently examine the law and draw its own conclusions after applying the law to the facts, and then may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or

---

[3] The Bankruptcy Court explained that "…all of the settlement proceeds are going to the debtors' cases at the confirmed percentages, so they will not receive any funds from the settlement unless their cases are paid in full on the confirmed terms." (doc. 1, p. 19).

remand with instructions for further proceedings." McKinney v. Russell, 567 B.R. 384, 386 (M.D. Ala. 2017) (citation omitted).

Additionally, the "court may affirm the bankruptcy court's judgment 'on any ground that appears in the record, whether or not that ground was relied upon or even considered by the court below." In re McLemore, 2023 WL 401332, at *3 (M.D. Ala. Jan. 25, 2023) (quoting Perry v. United States, 500 B.R. 796, 798 (M.D. Ala. 2013) (quoting Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)).

III. Analysis

A. The Bankruptcy Court's findings of fact

The parties do not dispute the Bankruptcy Court's factual findings (doc. 11, n. 9, p. 49). Accordingly, the factual findings are adopted by this Court (doc. 1, p. 4-7).

B. The Bankruptcy Court's legal conclusions

1. Property of the Chapter 13 bankruptcy estates.

The parties do not dispute the Bankruptcy Court's decision that the settlement proceeds are property of the Chapter 13 bankruptcy estates under 11 U.S.C. § 1306(a) and the confirmed plans (doc. 12, p. 8).

2. Modification of the Chapter 13 plan.

Pursuant to 11 U.S.C. § 1329[4], captioned "Modification of a plan after confirmation", a Chapter 13 plan may be modified, upon the request of the trustee, the debtor, or the holder of an

---

[4] Title 11 U.S.C. § 1329, captioned "Modification of plan after confirmation", states as follows:
(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; …

allowed unsecured claim, to "increase or reduce the amount of payments on claims" to unsecured creditors. 11 U.S.C. § 1329(a)(1).  Pursuant to 11 U.S.C. § 1329(b)(1), a modified plan must meet the requirements of 11 U.S.C. § 1325(a).  This includes the "best interests of creditors" or "liquidation" test found in 11 U.S.C. § 1325(a)(4); and because 11 U.S.C. § 1325(a) references 11 U.S.C. § 1325(b), the projected disposable income requirement found in 11 U.S.C. § 1325(b)(1)(B) is also applicable.[5]

   3. <u>Liquidation Test</u>

Section 1325(a) generally sets out the plan confirmation requirements.  Relevant here, the "best interests of creditors" or "liquidation" test is found in 11 U.S.C. § 1325(a)(4). As applied to plan modifications, the statute requires that any modification must ensure that:

> The value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount

---

> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

[5] Title 11 U.S.C. § 1325, captioned "Confirmation of plan", in relevant part, states as follows:
   (a) Except as provided in subsection (b), the court shall confirm a plan if— …

> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
> …

> (b)(1)(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

>that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4).   The purpose appears to be to protect the unsecured creditors' recovery by determining what the unsecured creditors would receive if the debtor proceeded under Chapter 7 instead of Chapter 13.  The Chapter 7 liquidation test establishes the least amount that a modified plan may provide to unsecured creditors.  The issue in dispute is what assets are included in the liquidation analysis under Chapter 7.

The Bankruptcy Court found that while the claim, or the settlement proceeds, was part of the Chapter 13 estate under 11 U.S.C. § 1306, i.e., property of the estate at the time of the proposed plan modification, it should "not [be] included in the liquidation analysis because that claim would not be part of a hypothetical chapter 7 under either § 541(a) or § 348(f)." (doc. 1, p. 12). Relying on the assumption that the hypothetical Chapter 7 liquidation test is accomplished by way of a hypothetical conversion to Chapter 7, the Bankruptcy Court applied 11 U.S.C. § 348(f). This statute states that when a Chapter 13 case is converted to a case under another chapter, the "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion[.]" 11 U.S.C. § 348(f).[6]  "[D]ate of filing the petition" meant the date of the original Chapter 13 petition. From this, the Bankruptcy Court held that because the post-petition personal injury settlement could not be "property of the estate, as of the date of filing of the petition", the settlement proceeds could not be included in the liquidation test.  To further the position that the "postpetition personal injury claims like the ones at hand would not be property of the bankruptcy estate if these cases were filed under chapter 7, or absent bad faith,

---

[6] The Bankruptcy Court relied upon *8 Collier on Bankruptcy* ¶ 1329.05, (Richard Levin & Henry J. Sommer eds., 16th ed.); In re Taylor, 631 B. R. 346 (Bankr. D. Kan. 2021), and In re Madrid, 2023 WL 3563019 (Bankr. W.D. Wash. May 18, 2023).

7

converted to chapter 7", the Bankruptcy Court points out that Congress did not include post-petition personal injury claims in 11 U.S.C. § 541(a)(5) as it did "inheritances, divorce property settlement, and life insurance proceeds to which the debtor becomes entitled within 180 days of the petition" (doc. 1, p. 11). Consequently, the Bankruptcy Court found that the liquidation test would not provide a basis for the proposed modification based on the receipt of settlement proceeds.

The Trustee argues the Bankruptcy Court erred by hypothesizing a conversion from Chapter 13 to Chapter 7 and consequently, 11 U.S.C. § 348(f) does not apply (doc. 11, p. 49-59). The Trustee points out that the relevant statutes for modification – 11 U.S.C. § 1329(b) and § 1325(a)(4) - do not mention a conversion, and no conversion occurs when the hypothetical Chapter 7 liquidation analysis is applied to a plan modification (Id., p. 53) (collecting cases). The Trustee explains that the purpose of – to exclude postpetition assets from the converted estate and thus encourage debtors to try Chapter 13[7] – is "not at play when the debtor is not converting … and the only issue is what assets are to be valued in a liquidation analysis on plan modification." (Id., p. 54). In that circumstance, the "purpose" of the liquidation test "is to ensure that the unsecured creditors receive at least as much as they would under the modified plan as under a hypothetical liquidation applied on the date of the modified plan." (Id.).

The Court agrees that 11 U.S.C. § 348(f) is inapplicable to the liquidation analysis. Specifically, the Court declines to graft a "hypothetical conversion analysis" under 11 U.S.C. § 348(f) and 11 U.S.C. § 541(a)(5) into the hypothetical Chapter 7 analysis. Instead, the Court finds persuasive the majority of courts that have held "the effective date of the plan" means the

---

[7] "If a Chapter 13 debtor is not able to meet his plan commitments, he can convert to a Chapter 7 and still hold onto his postpetition assets, putting him in no worse position than if he had filed Chapter 7 originally." (doc. 11, p. 54).

8

date of modification, not the date of the original Chapter 13 plan. In re Montenegro, - - - B.R. - - -, 2023 WL 8655441, at *4 (Bankr. S.D. Fla. Dec. 14, 2023) ("This Court adopts the majority view and concludes that the effective date of the modified plan controls."); In re Nachon-Torres, 520 B.R. 306, 313 (Bankr. S.D. Fla. 2014) (collecting cases). [8] And since the statute directs the Court to look at the amount that would be paid on such claim if the estates of the debtors were liquidated under Chapter 7 **on such date** [date of modification], the Court looks to what assets are property of the debtors' estates currently (not at the time of filing the original Chapter 13 petition).

In In re Waldron, 536 F. 3d 1239 (11th Cir. 2008), the Eleventh Circuit found that property of the estate under 11 U.S.C. § 1306(a)(1) included post-petition underinsured motorist insurance proceeds from a post-petition accident, and that the debtors were required to amend

---

[8] In re Tinney, 2012 WL 2742457, at *1 (Bankr. N.D. Ala. July 9, 2012) ("Whether the Court should grant the Trustee's motion simply boils down to whether the temporal language in § 1306 — 'after commencement of the case but before the case is closed, dismissed, or converted'— expands the 180–day time period in § 541(a)(5)(A); the Court finds that by its plain language § 1306 does just that. The large majority of courts to address the issue agree.") (collecting cases); In re Roscoe, 2017 WL 2839496, at *1–3 (Bankr. M.D. Fla. June 28, 2017) ("A well-respected minority of courts interpret section 1306 to incorporate the 180–day time limit found in section 541(a)(5).[] These courts also view section 541(a)(5) as a more specific statute concerning life insurance and inheritance proceeds that should prevail over section 1306(a)(1). But the reference in section 1306(a) to section 541 focuses on the 'kind' of property specified in 541. And, more importantly, section 1306(a) includes its own specific time parameters. Because section 1306 is applicable only in chapter 13 cases,[] it is the more specific statute and therefore more compelling when addressing chapter 13 issues."); In re Roberts, 514 B.R. 358, 364–65 (Bankr. E.D.N.Y. 2014) (footnotes omitted) (emphasis added) ("This Court is unpersuaded by the minority view. If the initial plan confirmation date is used to calculate the liquidation value for the best interests of creditors test for plan modification purposes, *the test fails to account for any property of the estate acquired post-confirmation, which, as in this case, may be the very basis for modifying the plan. If the best interests of creditors test need not account for post-confirmation property, a debtor will always satisfy the test at modification because it was satisfied at the initial plan confirmation.* The majority view, by accounting for property of the estate acquired post-confirmation, maintains the purpose of the best interests of creditors test at modification, ensuring that creditors receive at least as much as they would under a chapter 7 liquidation.").

their schedules to include this asset. (The debtors' post-confirmation personal injury settlement proceeds were exempt under Georgia law). The Eleventh Circuit stated that "[t]he disclosure of post confirmation assets gives the trustee and creditors a meaningful right to request under section 1329, a modification of the debtor's plan to pay his creditors." 536 F. 3d at 1245. From this, courts have reasoned that "[t]here would be no purpose served in holding that post-confirmation property is property of the estate if there was not a mechanism to include that property for purposes of distribution. That mechanism is provided by recalculating the chapter 7 test as of the date of the modified plan." In re Nachon-Torres, 520 B.R. at 314.

In this circumstance, where an asset has come into the Chapter 13 estate post-confirmation, it must be valued as of the date of modification for purposes of 11 U.S.C. § 1325(a)(4) and the value should be added to the previously calculated "best interests of creditors" test result at confirmation. In this action, the value of the post-confirmation assets of the Debtors' estates – the net settlement proceeds - should be added to the calculation of the "best interests of creditors" to determine whether the proposed modified plan satisfies 11 U.S.C. § 1329.

Applying the liquidation test, the increased distribution to the unsecured creditors as proposed by the Trustee, provides at least as much to the unsecured creditors as they would receive in a hypothetical Chapter 7 liquidation. Therefore, the best interest of creditors or liquidation test provides a basis for modification.

    4. The "projected disposable income" test

The "projected disposable income" test is found in 11 U.S.C. § 1325(b)(1)(B). The test has been applied to Chapter 13 plan modifications in this circuit and the parties do not contest its

application.[9] The projected disposable income test "provides that all of the debtor's projected disposable income to be received in the applicable commitment period" must be applied to the payments to the unsecured creditors. Accordingly, if the settlement proceeds increase the Debtors' projected disposable income, modification of the plan to account for these proceeds is required.

The Bankruptcy Court determined that since the settlement proceeds were not "regular income", a "substitute", or an "anticipated stream of payments", the proceeds were not "disposable income" (doc. 1, p. 9-10). Rather, the Court classified the settlement proceeds as assets. Consequently, the Court concluded that the "projected disposable income" test did not require modification of the plan.

The Court agrees that the settlement proceeds do not meet the definition of "disposable income" as used in an initial plan confirmation, but nevertheless may be considered as additional disposable income. As explained in In re Peebles, 500 B.R. 270 (Bankr. S.D. Ga. 2013):

> [T]he disposable income test [has] application in the context of a modification, but [] its application differs somewhat from that in an initial plan confirmation. To begin with, the Court agrees with the Debtors that the [settlement proceeds are] not "disposable income" as strictly defined under § 1325(b)(2), because that subsection defines disposable income as "current monthly income received by the debtor" less amounts reasonably necessary to be expended for maintenance and support of the debtor, certain charitable contributions, and expenditures necessary for a debtor's business if the debtor is engaged in business. The definition thus incorporates the concept of "current monthly income" which is defined in 11 U.S.C. § 101(10A). This section states, in relevant part:
>
>> The term "current monthly income"—
>> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's

---

[9] See In re Abrams, 632 B.R. 240, 241–42 (Bankr. S.D. Ala. 2021); In re Heideker, 455 B.R. 263 (Bankr. M.D. Fla. 2011); In re Heyward, 386 B.R. 919 (Bankr. S.D. Ga. 2008).

f

> spouse receive) without regard to whether such income is taxable income, derived during the 6–month period ending on—
> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
> (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent)....

> 11 U.S.C. § 101(10A). The six month look-back period of § 101(10A)(A) would clearly exclude [the settlement proceeds at issue], which [debtors] did not receive until well after the petition date. As one court noted, "[b]ecause the current definition of projected disposable income results in a calculation that is, in large part, fixed by pre-petition circumstances, reviewing that calculation at the time of a post-confirmation modification may not be particularly meaningful. Because of its statutory definition, 'current monthly income' once correctly calculated should not change over time. Thus, attempting to apply § 1325(b) to a § 1329 modification is not favored by post-BAPCPA cases." *In re Wetzel,* 381 B.R. 247, 251–52 (Bankr.E.D.Wis.2008).

> However, the Court rejects the notion that this narrow definition of disposable income that applies in the context of a debtor's plan confirmation will preclude a trustee from seeking an upward modification based on assets acquired by the debtor post-confirmation. It is illogical and contrary to the plain language of § 1329 to suggest that a post-confirmation "windfall" of any kind, which would presumably always be excluded from the new definition of disposable income, cannot support a modification by the trustee. After all, such [settlement proceeds] still represents disposable income in the broader sense of being funds that are not needed for the support of the debtor or their dependents. ...**The Court concludes that modifications were intended to capture sources of income or assets that did not exist during the six month look-back period which is used to calculate disposable income for purposes of confirming a Chapter 13 plan in the first instance.**
> ...
> The Court finds that nothing in the disposable income test of § 1325(b) precludes the Trustee's efforts to modify the plan pursuant to § 1329.

In re Peebles, 500 B.R. at 275–76 (emphasis added). Thus, although the "disposable income" test

does not provide a basis for modification, it also does not preclude modification.

### 5. Bankruptcy Court's exercise of discretion to not modify

"Even where modified plans satisfy these express limits, the statute reserves to the discretion of the bankruptcy court whether to confirm a modified plan. The bankruptcy court 'shall confirm' a Chapter 13 plan if it meets the requirements of § 1325, [11 U.S.C.] § 1325(a), but the court has discretion to confirm modified plans. Plans 'may be modified' if they meet the requirements of § 1329. [11 U.S.C.] § 1329(a).  Nothing prevents a bankruptcy court from refusing to confirm a modified plan put before it." In re Guillen, 972 F.3d 1221, 1229 (11th Cir. 2020)

The Bankruptcy Court interpreted the Eleventh Circuit's decision in In re Waldron, as adopting a "non-statutory 'ability to pay'" standard, and exercised its discretion under 11 U.S.C. § 1329, to find there was "no legitimate reason" to increase the percentage to the unsecured creditors as requested by the Trustee.   The Bankruptcy Court found that modification was not required under the "ability to pay" standard because the settlement proceeds did not "substantially improve" the Debtors' financial condition nor were they "unanticipated gain" which would increase their ability to pay the creditors.

The Bankruptcy Court first reasoned that a "debtor who settles a postpetition personal injury claim entered bankruptcy with an important non-property, non-monetary asset: good health and the ability to live injury-free and pain-free" and therefore, a settlement to compensate for loss of this asset does not "suddenly turn that non-estate asset into an asset which must be paid to prepetition creditors." (doc. 1, p. 17-18). Instead, the settlement proceeds are not new assets coming into the bankruptcy estate, because the Debtors have "given consideration in the

13

form" of their injuries, pain and suffering. The undersigned does not agree with the novel conclusion that the settlement proceeds are not new assets and are instead consideration.

However, the Court does not find that the Bankruptcy Court abused its discretion. "Although § 1329(a) does not explicitly state what justifies such a modification, it is well-settled that a substantial change in the debtor's financial condition after confirmation may warrant a change in the level of payments." In re Arnold, 869 F.2d 240, 241 (4th Cir. 1989). The Bankruptcy court determined that the relatively small amount of settlement proceeds did not substantially improve the financial condition of the Debtors whereas to justify a modification. This determination was made after the Bankruptcy Court received testimony from the Debtors which indicated that they are still living paycheck to paycheck. In addition, Debtor Boutwell was already on disability when "heavy merchandise" fell on her head in Dollar General. She testified that her husband took time off work at a paper mill to care for her after the accident, and they had to borrow $3,500.00 from her parents. Also, they have two vehicles, but her husband had an accident in one of their vehicles and needs $6,000 to repair it. Debtor Proffitt needs cosmetic surgery estimated at $500.00 for her nose after her fall at Walmart.

V. Conclusion

For the reasons discussed herein, the Bankruptcy Court's decision is AFFIRMED.

**DONE** and **ORDERED** this 12th day of January 2024.

> s / Kristi K. DuBose
> **KRISTI K. DuBOSE**
> **UNITED STATES DISTRICT JUDGE**